*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, DEPARTMENT OF CORRECTIONS, | ) ) ) | Supreme Court No. S-17775 |
| Appellant, | ) ) ) | Alaska Workers' Compensation Appeals Commission No. 19-008 |
| v. | ) ) | O P I N I O N |
| JOHN R. WOZNIAK, | ) ) | No. 7543 – July 23, 2021 |
| Appellee. | ) ) ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Clyde "Ed" Sniffen, Jr., Acting Attorney General, Juneau, for Appellant. Joseph A. Kalamarides, Kalamarides & Lambert, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Borghesan, Justice, not participating.]

CARNEY, Justice.

## I. INTRODUCTION

After initially disputing that a corrections officer was permanently and totally disabled from injuries suffered at work, the State conceded his disability status. The parties did not enter into a written settlement or stipulation because they disagreed

about the amount of attorney's fees the State should pay the officer's attorney. After a hearing the Alaska Workers' Compensation Board awarded attorney's fees under AS 23.30.145(a) in two parts: it awarded a specific amount of fees for work up to the time of the hearing and statutory minimum fees of 10% of ongoing benefits as long as the officer received permanent total disability benefits. The State appealed to the Alaska Workers' Compensation Appeals Commission, which affirmed the Board's decision because in the Commission's view the award was not manifestly unreasonable. The State then appealed the Commission's decision to us. We affirm the Commission's decision.

## II.    FACTS AND PROCEEDINGS

John Wozniak injured his right knee while working as a corrections officer and had right knee replacement surgery in 2014. He began vocational retraining but was unable to participate fully because of continuing health concerns. At times Wozniak was represented by attorney Burt Mason, although Wozniak filed at least one written workers' compensation claim on his own.

Wozniak developed a neuropathy,[1] which caused continuing pain in his lower leg, as a complication of the knee replacement surgery. His treating physician suggested an out-of-state doctor who might be able to evaluate and, if possible, treat the condition after she was unable to offer further care to improve his condition.

After some investigation Mason wrote to the State, proposing an agreement that Wozniak was permanently and totally disabled. The State refused the offer, so in

---

[1]    "Neuropathy" is defined as "damage, disease, or dysfunction of one or more nerves especially of the peripheral nervous system that is typically marked by burning or shooting pain, numbness, tingling, or muscle weakness or atrophy." *Neuropathy*, M E R R I A M - W E B S T E R . C O M   D I C T I O N A R Y , https://www.merriam-webster.com/dictionary/neuropathy (last visited May 27, 2021).

April 2018 Mason filed a workers' compensation claim on Wozniak's behalf for permanent total disability (PTD) benefits and attorney's fees. The State answered and denied Wozniak was permanently disabled. Ultimately, after a State-selected doctor agreed in large part with Wozniak's treating physician and after the State's attempt to find another doctor who would evaluate Wozniak's condition failed, the State agreed Wozniak was entitled to PTD benefits. The parties did not enter into a written settlement about PTD benefits. The State filed a compensation report reflecting that it had "initiated" PTD benefits effective February 12, 2019.

The parties were unable to agree on an amount of attorney's fees for Mason's work. The State mailed Mason a check for $25,000, representing what the State considered a reasonable fee. Mason did not cash the check because the Board had not awarded him attorney's fees or costs.[2]

Wozniak's claim did not specify which section of AS 23.30.145, the statute governing Board-ordered attorney's fees, should apply to his claim. Mason filed an affidavit of his hours; an affidavit can be used when seeking fees under either AS 23.30.145(a) or (b).[3] Wozniak's hearing brief argued that the State had controverted

---

[2]     Under AS 23.30.260(a)(1) it is a misdemeanor for an attorney to "receive[] a fee, other consideration, or a gratuity on account of any services rendered for representation or advice with respect to a claim, unless the consideration or gratuity is approved by the [B]oard or the court." There are two exceptions that are not relevant to this appeal.

The State took the position at the fees hearing that it was not precluded from paying Mason attorney's fees without a Board order because a Board regulation does not require Board approval "if the fee is paid by the employer to the employer's attorney." 8 Alaska Administrative Code (AAC) 45.180(h) (2011). As Mason pointed out, he was not the employer's attorney.

[3]     *See* 8 AAC 45.180(b), (d)(1) (requiring a fee affidavit if attorney seeks
(continued...)

in fact[4] his PTD claim and sought attorney's fees for work done between a 2016 stipulation[5] and the State's acceptance of his PTD status, contending that Mason worked on the claim before attempting settlement with the State in 2018.

The State responded that Mason had secured no benefits for Wozniak and maintained that Mason's claimed hours and rates were unreasonable. It argued that Mason's billing practices were not credible, attaching an unsigned draft fee affidavit from settlement discussions. The State did not ask the Board to interpret AS 23.30.145, nor did it suggest that the Board consider the value of statutory minimum fees and compare that value to reasonable fees when awarding attorney's fees.

The Board held a hearing on the fees dispute in March 2019.[6] No one testified at the hearing. Mason objected to some documents the State had attached to its hearing brief and asked the Board to allow him "additional time to address . . . the comments and derisions [sic]" the State made in its brief related to his fee affidavit. The State asserted that it was "not calling Mr. Mason a liar," "a bad person," or "a dishonest person," saying it was only attacking "the credibility of his billing practice." The Board

---

[3]     (...continued)
more than statutory minimum fees under subsection .145(a) or reasonable fees under subsection .145(b)).

[4]     *See Alaska Interstate v. Houston*, 586 P.2d 618, 620 (Alaska 1978) (holding that a formal controversion is not needed for the Board to award fees under AS 23.30.145(a) if claim is controverted in fact).

[5]     In 2016 the State and Wozniak stipulated to Wozniak's continuing entitlement to temporary total disability and settled related issues, including attorney's fees.

[6]     The Board had scheduled a hearing on the written claim before the State accepted the compensability of PTD benefits. The State indicated that one reason it agreed to PTD benefits when it did was because the case was already scheduled for a hearing.

took the objection under advisement, and the parties proceeded to argue their cases. Neither party offered evidence of the potential value of Wozniak's ongoing PTD benefits or the amount Mason might receive as statutory minimum fees on future benefits.[7]

In its written decision the Board made detailed findings of fact. It found that from February 17, 2016, when the State and Wozniak entered into a stipulation, until March 26, 2018, when Mason prepared a draft settlement proposal about PTD, the State had no controversion in effect and was not resisting any benefit. The Board found that the State "began resisting accepting [Wozniak] as permanently and totally disabled"[8] on April 9, 2018, when it rejected the settlement proposal.

Because of its finding about the State's resistance, the Board evaluated only Mason's billing entries on or after April 9, 2018. It approved 51.4 hours for work up to February 28, 2019, disallowing about 10 claimed hours. The Board awarded an additional 4.9 hours for hearing-related work. After detailing Mason's experience as a workers' compensation attorney, the Board found that $400 was a "reasonable and fully compensable" hourly rate for Mason. The Board found that after the State rejected the 2018 settlement proposal, it "vigorously defended against" the PTD claim and that "Mason provided valuable legal services" and "succeeded in obtaining" PTD benefits for Wozniak. The Board noted, "While the nature, length and complexity of the services performed were not unusual, the benefits resulting from Mason's services are significant

---

[7]     *See* AS 23.30.145(a) (allowing Board to award attorney's fees as a percentage of benefits when employer controverts a claim and employee's attorney successfully obtains award of compensation).

[8]     In *Harnish Group, Inc. v. Moore*, we stated that a controversion in fact occurs "when an employer [does] not 'unqualifiedly accept' " an employee's claim. 160 P.3d 146, 151 (Alaska 2007) (quoting *Underwater Constr., Inc. v. Shirley*, 884 P.2d 156, 159 (Alaska 1994)).

as [Wozniak] will continue to receive permanent total disability benefits while he remains in that status."

The Board awarded fees solely under AS 23.30.145(a), deciding that the State had controverted in fact Wozniak's PTD benefits; it did not award fees under AS 23.30.145(b). The Board denied all of Mason's requested fees from February 19, 2016 through March 30, 2017.[9] And it decided that Mason was entitled to $22,520 in attorney's fees for work he did from April 9, 2018, through the time of hearing. It then awarded Mason additional ongoing statutory minimum fees "during the continuance of [Wozniak's] disability." The Board approved the State's $25,000 payment to Mason, which resulted in Mason being overpaid $2,480. The Board instructed the State to "offset this overpayment against future statutory minimum attorney['s] fees" to Mason. The Board also awarded Mason costs, noting that the State had not objected to any of the costs.

The State appealed to the Commission. In its points on appeal the State argued that: (1) the Board erred in deciding it had controverted in fact PTD benefits; (2) the Board erred in awarding "ongoing, statutory minimum attorney['s] fees under AS 23.30.145(a) in addition to and without any reduction for the $22,520 actual attorney['s] fees the [B]oard also awarded under AS 23.30.145(b)"; (3) the Board erred in awarding statutory minimum fees because the amount of weekly compensation to Wozniak did not change; and (4) substantial evidence in the record did not support the Board's fees-related decision.

The State's brief abandoned some appeal points and instead focused on arguments that the fees awarded were unreasonable and that there were inadequate

---

[9]    The Board appears to have made a typographical error in the year. The Board did not award fees to Mason for any work before March 30, 2018.

findings to justify both awarding a set amount of fees up to the time of the Board order and additionally awarding ongoing statutory minimum fees. The State did not propose an analytical template or ask the Commission to adopt one for the Board to use in AS 23.30.145(a) cases. The State asked the Commission to reverse the Board's award of "both $22,520 in 'reasonable and fully compensatory' hourly fees in addition to ongoing statutory minimum[] [fees]" and "award Mason ongoing statutory fees once the statutory fees exceed the $25,000 [the State] has already paid Mr. Mason."

Wozniak responded that the award was consistent with precedent and supported by substantial evidence in the record. He argued that his total potential PTD over his lifetime could be $675,528 if he lived as long as the life expectancy contained in an epidemiology bulletin. Mistakenly stating that the Board had awarded fees under both AS 23.30.145(a) and (b), he contended that the Board's award of $22,520 up to the time of hearing was only 3.3% of his total potential future PTD, which would be manifestly unreasonable as total attorney's fees. He maintained that the Board's award was reasonable and asked the Commission to affirm it.

The Commission affirmed the Board's decision.[10] Its decision analogized this case to one of its earlier decisions, which affirmed an award of fees under both AS 23.30.145(a) and (b).[11] The Commission discussed the benefits Mason secured for Wozniak and decided the attorney's fee award was "not excessive nor unreasonable for the benefit obtained" and "supported by law and substantial evidence in the record as a whole."

The State appeals.

---

[10]     Mason died about two weeks before the Commission's scheduled oral argument date. Another attorney represented Wozniak beginning in November 2019.

[11]     *Uresco Constr. Materials, Inc. v. Porteleki*, AWCAC Dec. No. 152 (May 11, 2011), https://labor.alaska.gov/WCcomm/memos-finals/D_152.pdf.

## III. STANDARD OF REVIEW

"In an appeal from the Alaska Workers' Compensation Appeals Commission, we review the Commission's decision."[12] "We independently review the Commission's conclusion that substantial evidence in the record supports the Board's factual findings by independently reviewing the record and the Board's findings."[13] We "review the Commission's legal conclusions about the Board's exercise of discretion by 'independently assess[ing] the Board's rulings.' "[14] "The Board's 'award of attorney's fees should be upheld unless it is "manifestly unreasonable." ' "[15] We review de novo whether an argument was preserved for appeal.[16]

## IV. DISCUSSION

### A. The State Waived Its Argument About Construing AS 23.30.145.

The State argues that the Commission erred in its application of AS 23.30.145, proposing a multi-step process for the Board to use when calculating attorney's fees. Wozniak contends that the State waived this argument by not raising it earlier in the proceedings. In reply the State maintains that it did in fact raise the argument by asking the Commission to credit the entire $25,000 against the ongoing statutory fees. In the alternative, the State asserts that its current argument meets the test

---

[12] *Burke v. Raven Elec., Inc.*, 420 P.3d 1196, 1202 (Alaska 2018).

[13] *Rusch v. Se. Alaska Reg'l Health Consortium*, 453 P.3d 784, 793 (Alaska 2019) (quoting *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014)).

[14] *Id.* (alteration in original) (quoting *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009)).

[15] *Id.* (quoting *Williams v. Abood*, 53 P.3d 134, 139 (Alaska 2002)).

[16] *Ivy v. Calais Co.*, 397 P.3d 267, 275 n.26 (Alaska 2017) (citing *Mitchell v. Mitchell*, 370 P.3d 1070, 1076 (Alaska 2016)).

we have adopted for considering arguments not explicitly raised in earlier proceedings: "the issue is (1) not dependent on any new or controverted facts; (2) closely related to the appellant's trial court arguments; and (3) could have been gleaned from the pleadings."[17]

But the State's argument about how the Board should apply AS 23.30.145 was not raised before either of the administrative agencies, and it meets no part of our three-part test. It is therefore waived. Before the Board and the Commission, the State argued about the reasonableness of the fees request and whether evidence supported the Board's findings. Its proposal for a detailed multi-step process for the Board's use when awarding attorney's fees is not closely related to these arguments. In addition, because the State's arguments before the Board and Commission focused on factual issues and discretionary actions, the legal argument the State now makes cannot be gleaned from its agency pleadings.

Most importantly the process the State proposes in its brief depends on new or controverted facts. The proposal would require the Board in every case to determine the "actual or estimated" value of statutory minimum fees on the benefits awarded and compare that amount to an amount the Board considers a "fully compensatory and reasonable" attorney's fee for the work done on the claim. The Board made no findings about the total amount of statutory minimum fees Mason could or would be paid during the time Wozniak might receive PTD benefits. The figure the State uses as a factual basis for its calculations came from Mason's brief to the Commission. Nor does the State explain how the Board would calculate the value of future statutory minimum attorney's fees when we have expressly held that the Board cannot award future statutory

---

[17]     *Radebaugh v. State, Dep't of Health & Soc. Servs., Div. of Senior & Disabilities Servs.*, 397 P.3d 285, 292 (Alaska 2017) (quoting *Erkins v. Alaska Tr., LLC*, 265 P.3d 292, 298 n.15 (Alaska 2011)).

minimum fees as a lump sum because of multiple uncertainties involved in calculating the benefits themselves.[18]

Because the State did not ask the Board or the Commission to construe AS 23.30.145 to require an analysis of future statutory minimum fees to compare them to reasonable fees, because its appellate argument depends on new facts, and because the argument is neither closely related to its arguments made before the administrative agencies nor inferable from those arguments, the State waived consideration of this argument.

**B.     The Commission Did Not Err By Deciding The Attorney's Fee Award Was Supported By Substantial Evidence And Not Manifestly Unreasonable.**

The State alternatively contends that the Board's award was manifestly unreasonable.  The State maintains that the fees awarded were excessive, rather than fully reasonable and compensatory, because the Board awarded more than the "already generous minimum fee."  But this argument is based on the faulty premise that the award of statutory minimum fees in fact entitled Mason to a specific amount of future fees.  In the State's view the Board awarded duplicative fees, or if the award was not a duplicative fee, the amount was unreasonable because it "far exceeded" a reasonable fee.  The State minimizes both the amount of work Mason did on the case and the importance to Wozniak of receiving PTD benefits.  Wozniak responds that the award was not manifestly unjust.

Neither administrative agency determined the amount of future statutory minimum fees.  Before the Commission Mason used information from an epidemiology

---

[18]     *See Gibeau v. Kollsman Instrument Co.*, 896 P.2d 822, 823-24 (Alaska 1995) (declining to allow lump-sum attorney's fees awards on future benefits because of uncertainties and potential for "expensive and time-consuming debate before the Board").

bulletin to estimate Wozniak's potential life span and resulting future PTD benefits, assuming that Wozniak would in fact continue to receive PTD benefits for his entire lifespan. Mason's estimate did not take into account any possible offsets to the benefit amount. The Commission cited this argument in its decision, but recognized the argument was based on Wozniak's "estimated lifespan" and resulted in a "possible amount" of PTD benefits. An argument in an appellate brief is not a factual finding, and the Commission did not treat it as one.

The State's argument that the fees awarded are excessive is grounded in the figure Mason estimated. But we observed in *Gibeau v. Kollsman Instrument Co.* that the calculation method Mason used was likely to overestimate the amount of future attorney's fees.[19] Wozniak's future benefits could be reduced because of offsets for other benefits, such as Social Security.[20] And no person has a certain life span; this is one reason we rejected Gibeau's request for a lump-sum payment of future fees.[21] There is also no guarantee Wozniak will continue to receive PTD benefits indefinitely because, as Mason admitted at the Board hearing, the State could later controvert the benefits. For these reasons, we are not persuaded by the State's argument that statutory minimum fees in this case are "already generous."[22]

---

[19]     *Id.* at 823-24.

[20]     *See* AS 23.30.224-.225 (allowing offsets for disability or retirement benefits); *cf. Gibeau*, 896 P.2d at 824 & n.6 (noting potential for offset because of tort settlement).

[21]     *See Gibeau*, 896 P.2d at 824 (listing "uncertainty surrounding when an injured worker may die" as one area of uncertainty that would require Board resolution in order to award lump-sum statutory fees on future benefits).

[22]     Indeed the State acknowledges that even if Wozniak received PTD benefits without offsets for the rest of his life expectancy, the Board's award would be only
(continued...)

Turning to the question of the actual fees awarded, we agree with the Commission's conclusion that the award was not manifestly unreasonable and the Board's order was consistent with AS 23.30.145, even though we do not adopt all of the Commission's reasoning. The Commission considered the fee award here to be essentially the same as an award it affirmed in *Uresco Construction Materials, Inc. v. Porteleki*.[23] But *Porteleki* involved an award under both AS 23.30.145(a) and (b), so *Porteleki* considered whether the Board correctly applied our precedent that these two subsections "are not mutually exclusive."[24] *Porteleki* required the employer to pay statutory minimum fees "when, and if," the amount of statutory minimum fees exceeded the reasonable fees the Board awarded under .145(b).[25] In effect, the Board offset the entire award of reasonable fees against any statutory minimum fees awarded. To the extent statutory minimum fees were ever paid under the *Porteleki* order, they would never exceed the minimum percentage set out in AS 23.30.145(a).[26]

In Wozniak's case, in contrast, the Board awarded fees solely under AS 23.30.145(a) and did not offset the fixed amount of reasonable fees against ongoing statutory minimum fees. In essence the Board awarded Wozniak AS 23.30.145(a) fees that exceeded the statutory minimum. The question before us is thus limited to whether

---

[22]     (...continued)
13.5% of potential total PTD benefits. AS 23.30.145(a) sets 10% as the minimum fee after the first $1,000 in benefits.

[23]     AWCAC Dec. No. 152 at 14-15 (May 11, 2011), https://labor.alaska.gov/WCcomm/memos-finals/D_152.pdf.

[24]     *Id.* at 8 (quoting *Circle De Lumber Co. v. Humphrey*, 130 P.3d 941, 952 n.76 (Alaska 2006)).

[25]     *Id.*

[26]     *Id.*

the Board acted improperly by either awarding fees above statutory minimum fees or by using the method it did instead of awarding fees as an increased percentage of benefits.[27] Based on the Board's findings the Commission correctly determined that the Board did not abuse its discretion.

Wozniak argued and the Board found that the State controverted in fact Wozniak's PTD benefits resulting in a possible award of minimum statutory fees.[28] Based on Mason's affidavit documenting the time he spent on the PTD claim, Board regulations allowed the Board to award fees in excess of AS 23.30.145(a)'s minimum fees.[29] The State argues that the Board's award of more than the minimum fees is manifestly unreasonable and not supported by the record. We disagree.

Alaska Statute 23.30.145(a) sets out a list of factors for the Board to consider when awarding fees, including not only "the nature, length, and complexity of the services performed" but also "the benefits resulting from the services." The Board's finding that the State "vigorously defended against [the] permanent total disability claim" is supported by the record. After the claim was filed, the State required Wozniak to attend an employer's medical evaluation (EME) and continued litigating the claim after receiving the EME report, which agreed in many respects with Wozniak's treating physician. The State deposed Wozniak and continued to pursue additional medical evaluations until it notified the Board less than two weeks before the hearing — scheduled at Mason's request — that it had "accepted [Wozniak] as permanently and

---

[27]     *Cf. Circle De Lumber Co.*, 130 P.3d at 945, 954 (affirming award of 35% of benefits).

[28]     *See* AS 23.30.145(a) (authorizing statutory minimum fees when employer controverts claim); *Alaska Interstate v. Houston*, 586 P.2d 618, 620 (Alaska 1978) (holding that controversion in fact is sufficient for fees under AS 23.30.145(a)).

[29]     8 AAC 45.180(d).

totally disabled." The Commission and Board both recognized that the benefits resulting from Mason's work are "significant" for Wozniak; the State does not dispute this finding. The parties agreed that Wozniak's medical condition was unusual, with both attorneys contacting doctors to better understand whether further treatment was possible. The Board balanced these factors and the relatively straightforward nature of the legal work in deciding to award an amount of fees that exceeded the statutory minimum. We see no error in this decision because the Board considered the relevant statutory factors and made findings, supported by the record, about them.

The State also argues that the Board could not award fees by calculating an amount of fees for work to the time of hearing and then ordering continuing statutory minimum fees. It contends that the Board should be limited to awarding an increased percentage of benefits controverted and awarded if it wants to award fees in excess of the statutory minimum under subsection .145(a).

We have consistently construed AS 23.30.145 "as reflecting the legislature's intent that attorneys in compensation proceedings should be reasonably compensated for services rendered to a compensation claimant"[30] and as providing adequate fees so that competent counsel are available to represent claimants.[31] Because of the uncertainty in both the duration and amount of Wozniak's continuing PTD benefits, the Board's award accomplished the statutory objectives.

The Board relied on our decision in *Harnish Group, Inc. v. Moore*, which established that a controversion in fact occurs "when an employer [does] not

---

[30] *Rusch v. Se. Alaska Reg'l Health Consortium*, 453 P.3d 784, 794 (Alaska 2019) (quoting *Rose v. Alaskan Vill., Inc.*, 412 P.2d 503, 509 (Alaska 1966)).

[31] *Wise Mech. Contractors v. Bignell*, 718 P.2d 971, 973 (Alaska 1986).

'unqualifiedly accept' " an employee's claim,[32] to award fees for work beginning only after the State rejected Mason's proposed settlement about the permanence of Wozniak's disability. The Board reasoned that before the settlement rejection the State was paying compensation pursuant to a stipulation and did not contest Wozniak's entitlement to retraining benefits after that stipulation; so it had "unqualifiedly accept[ed]" Wozniak's claim during that time.[33] The hours on which the fees award was based did not include time Mason spent investigating the claim, which he was obligated to do.[34] And because Wozniak was 58 years old at the time the State changed his benefits, the Board was aware of the possibility of offsets that could decrease his benefit amount in the near future.[35]

In light of the uncertain amount of continuing benefits and the uncertain length of the human lifespan, the Board could reasonably fashion a fee award as it did: awarding fees both as a lump sum based on Mason's past work and as statutory minimum fees after its order. The Board's fee order ensured that Mason received at least a minimum amount of fees for his work but allowed him some fees above the statutory minimum. The Board has discretion to fashion an award as it sees fit so long as it does not abuse that discretion. Even if the Board's award here was somewhat higher than what the State proposed as a reasonable fee and was in a novel format, neither the

---

[32]     160 P.3d 146, 151 (Alaska 2007) (quoting *Underwater Constr., Inc. v. Shirley*, 884 P.2d 156, 159 (Alaska 1994)).

[33]     *Shirley*, 884 P.2d at 159.

[34]     *See* Alaska R. Prof. Conduct 3.1 cmt. (requiring attorneys to "inform themselves about the facts of their clients' cases").

[35]     *See* AS 23.30.224 (authorizing coordination of benefits for some State employees); AS 23.30.225 (allowing offsets for Social Security and pension payments).

amount of the fees nor the manner in which they were awarded was manifestly unreasonable under the circumstances presented here.

## V. CONCLUSION

We AFFIRM the Commission's decision.

**7543**